**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

STEPHEN GIFFORD and
STEPHANIE GIFFORD,

      Plaintiffs,

vs.                                      Case No. 5:06cv108-RS

THINKING OUTSIDE, LLC,
KSQ a division of WESTERN
INDUSTRIES, INC., and
PRECISION PALLET, INC.,

      Defendants.
_____/

### ORDER ON DEFENDANT PRECISION PALLET, INC.'S MOTION TO DISMISS

Before me is Defendant Precision Pallet, Inc.'s Motion to Dismiss (Doc. 46).

### I. Background

In this diversity action, Plaintiffs Stephen and Stephanie Gifford sue Defendants for negligence and loss of consortium after a greenhouse weighing 1,512 pounds and transported on a wooden pallet[1] fell and caused injury to Mr. Gifford. The accident occurred on October 9, 2005, at Sam's Club in Panama City, FL, where Mr. Gifford was employed. The Second Amended Complaint (Doc. 38) alleges that Defendant Thinking Outside, LLC ("Thinking Outside"), designed the greenhouse and that Defendant KSQ packaged and delivered the greenhouse.

The complaint also alleges that Defendant Precision Pallet, Inc. ("Precision Pallet") negligently designed, manufactured, selected, or maintained the pallet on which the greenhouse was stored and transported. Precision Pallet, a Kansas corporation,

---

[1] A pallet is a flat structure designed to support and transport goods while being lifted by a forklift or other lifting device. The goods are placed on top of the pallet and secured with straps or plastic wrap.

specially appears and moves to dismiss the Second Amended Complaint for lack of personal jurisdiction (Doc. 46).

On April 6, 2007, I entered an order granting Plaintiffs' request to conduct limited discovery relating to the jurisdictional issue raised in the motion to dismiss (Doc. 49). Both parties were also permitted to file supplemental memoranda on that issue. The parties submitted an affidavit and deposition testimony of Justin Groom, the president of Precision Pallet.

## II.  Analysis

### A. Fed. R. Civ. P. 12(b)(2) Motion to Dismiss Standard

The sole issue presented by the motion is whether Precision Pallet is within the jurisdiction of this Court.  When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the nonresident defendant.  Morris v. SSE, Inc., 843 F.2d 489, 491 (11th Cir. 1988).  A prima facie case of personal jurisdiction exists when the plaintiff presents enough evidence to withstand a directed verdict.  Id. at 492.  The court must accept as true the allegations in the complaint if uncontroverted by the defendant's affidavits and depositions.  Id.  All reasonable inferences must be construed in favor of the plaintiff.  Id.

### B.  Personal Jurisdiction

In diversity cases, personal jurisdiction requires a two-part analysis.  Madra v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).  First, jurisdiction must be examined under the state long-arm statute.  Id. (citations omitted).  Second, a court must determine whether sufficient "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); see also Meier v. Sun Int'l Hotels Ltd., 288 F.3d 1264, 1274 (11th Cir. 2002); Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).  Only if both requirements are satisfied may a court exercise personal jurisdiction over a nonresident defendant.  Madara, 916 F.2d at 1514.

**1. Florida's Long-Arm Statute**

The motion is substantially devoted to contesting the sufficiency of Precision Pallet's contacts with Florida under the constitutional requirement.  The applicability of Florida's long-arm statute is addressed in a single, conclusory footnote:

> Although Plaintiffs appear to have alleged that Precision Pallet designed and/or manufactured the pallet in question, Precision Pallet does not believe that Plaintiffs have pled sufficient facts against Precision Pallet to implicate Florida's long-arm statute.

(Doc. 46:4.)  Precision Pallet fails to specify which allegations are insufficiently pled so as to deprive this Court of jurisdiction under the long-arm statute.  Florida's long-arm statute does appear to vest this Court with jurisdiction over Precision Pallet under Fla. Stat. § 48.193(1)(b) & (f)(2).[2]  However, that issue need not be conclusively determined because the constitutional requirement for personal jurisdiction is clearly not satisfied.

**2. Due Process**

For jurisdiction to exist, due process requires that a nonresident defendant have "fair warning" that a particular activity may subject it to the jurisdiction of a foreign sovereign.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-472, 105 S. Ct. 2174, 2181-82, 85 L. Ed. 2d 528 (1985); Shaffer v. Heitner, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Stevens, J. concurring in judgment).  Unilateral action by the plaintiff or a third party cannot create the requisite "minimum contacts."  Hanson v. Deckla, 357 U.S. 235, 78 s. Ct. 1228, 1239, 2 L. Ed. 2d 1283 (1958); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).  Rather, the defendant must have "purposefully availed" itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King, 471 U.S. at 476, 105 S. Ct. at 2184, quoting Hanson, 357 U.S. at 253, 78 S. Ct. at 1239.  In addition, the nonresident's "conduct and

---

[2]Fla. Stat. § 48.193(1)(b) & (f)(2) vests jurisdiction in a court over persons who have "committ[ed] a tortious act within this state" or who have "caus[ed] injury to persons . . . within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury:  Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."  Fla. Stat. § 48.193(1)(b) & (f)(2).

connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 854-60 (11th Cir. 1990). Finally, a forum's exercise of personal jurisdiction over a defendant must also comport with "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316, 66 S. Ct. at 158, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940).

"Minimum contacts" with the forum state serves two important functions: (1) "[i]t protects the defendant against the burdens of litigating in a distant or inconvenient forum," and (2) it "ensures that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." World-Wide Volkswagen, 444 U.S. at 291-92, 100 S. Ct. at 564, 62 L. Ed. 2d at 498. The nature and quality of Precision Pallet's contacts with Florida fail the constitutional requirement.

Precision Pallet builds wooden pallets. Justin Groom, the president and owner of Precision Pallet, attended high school and college in Kansas and has lived in Kansas for 48 years. The company is a small Kansas corporation employing from four to eight employees. Its principal place of business is in Kansas.

In addition to a website, Precision Pallet markets its pallets by "occasionally" running ads in the local newspaper or sponsoring local radio ads. It has no "outside marketing assistance." The website has solicited no business for Precision Pallet.

Precision Pallet's customers are located in Kansas, Oklahoma, and in no other states. It has never supplied pallets for customers in states other than Oklahoma and Kansas. The only states to which Groom has traveled in relation to the business of Precision Pallet are Kansas, Oklahoma, and Missouri.

Groom testified in his deposition that he has no desire to expand Precision Pallet's business beyond the Midwest. He stated:

> I don't believe it's practical. Obviously pallets are a bulky item and freight becomes an issue after, you know, a certain number of miles, and so you're normally limited to, you know, a certain radius around your location to be competitive.

(Groom Dep., Doc. 54:34, lines 6-11.) On only one occasion has Groom had any business-related contacts outside the Midwest. A caller, through a hearing-impaired

telephone operator, stated that he was from California. The caller expressed interest in Precision Pallet's products. Believing the call to be fraudulent, Groom had no further contact and did not conduct business with the caller.

At no time has Precision Pallet maintained an office in Florida. The company has no employees, agents, or representatives in Florida. Precision Pallet has never advertised, conducted business, or solicited business in Florida. It has never sold directly to any company, corresponded by letter or email, telephoned, been contacted by, received drawings, or entered into a contract with any company or customer located in Florida. Precision Pallet does not have a registered agent to accept service of process in Florida. Groom has traveled to Florida only twice in his life, both times to vacation with his family at Disney World, Universal Studios, and Cape Canaveral, and not for business purposes. When asked whether it would make "business sense" to "build" and "ship" a pallet to a Florida customer, Groom testified: "I don't believe it would, similar to the contact we had from California, simply because of the distance involved." (Groom Dep., Doc. 54:76, lines 14-16.)

In this case, Precision Pallet entered into an agreement with Defendant KSQ to build pallets. KSQ, another Kansas corporation, is located approximately six or seven miles from Precision Pallet. KSQ informed Groom that his pallets would be used "in connection with" the Smart Gardener's Workshop, a product that would be sold in Sam's Club stores. KSQ did not specify which Sam's Club stores nor in which states the product would be delivered or sold.

The Smart Gardener's Workshop was the "greenhouse" product which injured Mr. Gifford. The product was designed and manufactured by Defendant Thinking Outside. Precision Pallet had no role in designing or manufacturing the Smart Gardener's Workshop. Precision Pallet was not present during any discussions or meetings between KSQ and Thinking Outside. Groom has never spoken to anybody employed by Thinking Outside.

The pallets used in connection with the Smart Gardener's Workshop were constructed in Kansas by Precision Pallet for KSQ. Precision Pallet delivered the pallets to KSQ in Kansas. Precision Pallet supplied no packaging materials - banding, shrink wrap, or otherwise - used to package and transport the Smart Gardener's

Workshop.  After delivering the pallets to KSQ in Kansas, Precision Pallet's work was finished; it did not package, transport, or deliver any of the pallets to Sam's Club or to Florida.

On these facts, I find that Precision Pallet lacks the minimum contacts necessary to support a finding of personal jurisdiction in this forum. The affidavit and deposition of Groom - the only evidence presented by either party - conclusively establish that Precision Pallet not only lacks the necessary "minimum contacts" with Florida to support jurisdiction but lacks *any* contact with Florida.  Precision Pallet's contacts are restricted to the Midwestern states.  Only KSQ and Thinking Outside, the defendants who actually designed, manufactured, packaged, transported, and delivered the pallets and the Smart Gardener's Workshop to Florida, maintained contacts with Florida.

Lacking contact with Florida, Precision Pallet cannot have "purposefully availed" itself of the benefits and protections of Florida law and could not "reasonably anticipate being haled" into a Florida court.  "The Due Process Clause 'does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.'" Int'l Shoe, 326 U.S. at 319, 66 S. Ct. at 160, 90 L. Ed. at 104.

The facts in this case are similar to those in World-Wide Volkswagen, supra, where the Supreme Court held that an Oklahoma trial court could not exercise in personam jurisdiction over a New York automobile retailer and wholesale distributor. Plaintiffs, residents of New York, sued the automobile companies after incurring injuries in an automobile accident in Oklahoma.  The Court rejected the Oklahoma courts' findings of jurisdiction and stated that

> we find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction.  Petitioners carry on no activity whatsoever in Oklahoma.  They close no sales and perform no services there.  They avail themselves of none of the privileges and benefits of Oklahoma law.  They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State.  Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one,

> isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.

World-Wide Volkswagen, 444 U.S. at 295, 100 S. Ct. at 566, 62 L. Ed. 2d at 500.

Paralleling the findings of the Court in World-Wide Volkswagen, I find that jurisdiction over Precision Pallet is lacking. Precision Pallet carries on no activity, closes no sales, and performs no services in Florida. It avails itself of none of the privileges and protections of Florida law. It solicits no business in Florida either through salespersons or through advertising. Nor does the record show that Precision Pallet sells pallets to Florida customers or residents or that it indirectly, through others, serves or seeks to serve the Florida market. In short, as in World-Wide Volkswagen, Plaintiffs seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single wooden pallet, like the single Audi in World-Wide Volkswagen, sold in Kansas to Kansas residents, just happened to find its way to Florida through the unilateral activities of the other named defendants.

Both parties rely on Asahi Metal Indus. Co. v Superior Court of California, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). In Asahi, the Supreme Court determined whether

> the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum state in the stream of commerce constitutes 'minimum contacts' between the defendant and the forum State such that the exercise of jurisdiction 'does not offend 'traditional notions of fair play and substantial justice.'

480 U.S. at 105, 107 S. Ct. at 1028-29, 94 L. Ed. 2d at 100 (citations omitted). Resolution of that issue was important because

> [s]ince World-Wide Volkswagen, lower courts have been confronted with cases in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum State, but the defendant did nothing else to purposefully avail itself of the market in the forum State. Some courts have understood the Due Process Clause, as interpreted in World-Wide Volkswagen, to allow an exercise of personal jurisdiction to be

> based on no more than the defendant's act of placing the product in the stream of commerce. Other courts have understood the Due Process Clause and . . . World-Wide Volkswagen to require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.

Asahi, 480 U.S. at 110, 107 S. Ct. at 1031, 94 L. Ed. 2d at 103.

In Asahi, a majority of the Court concluded that the "fair play and substantial justice" prong of Int'l Shoe was not satisfied. The Court, however, divided three ways on the minimum contacts necessary to support personal jurisdiction in a "stream of commerce" case, with no opinion receiving a majority of votes.

Justice O'Connor, joined by three other justices, set forth the most restrictive test of jurisdiction. She concluded that mere "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." 480 U.S. at 112, 107 S. Ct. at 1032, 94 L. Ed. 2d at 104 (emphasis added). Further, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Id. (emphasis added). Justice O'Connor identified four examples of additional conduct which might indicate the requisite intent or purpose to serve the market in the forum state: (1) designing the product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; or (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. Id.

Applying this test to the facts in Asahi, Justice O'Connor stated that:

> [a]ssuming, arguendo, that respondents have established Asahi's awareness that some of the valves sold to Cheng Shin would be incorporated into tire tubes sold in California, respondents have not demonstrated any action by Asahi to purposefully avail itself of the California market. Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control, or employ the distribution system that brought its valves to California . . . There is no evidence that Asahi designed its product in anticipation of sales in California . . . On

> the basis of these facts, the exertion of personal jurisdiction over Asahi by the Superior Court of California exceeds the limits of due process.

480 U.S. at 112-13, 107 S. Ct. at 1032, 94 L. Ed. 2d at 104-05.  The facts in this case are sufficiently analogous to those in Asahi as to defeat the exercise of jurisdiction over Precision Pallet.

Justice Brennan, joined by three other justices, disagreed with the O'Connor test and favored a looser test.  Under this broader test, a defendant may be properly subjected to jurisdiction whenever "the regular and anticipated flow of products," as opposed to "unpredictable currents or eddies," leads the product to be marketed in the forum state:  "As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."  480 U.S. at 117, 107 S. Ct. at 1034, 94 L. Ed. 2d at 107.

Here, even under Justice Brennan's more expansive test, Precision Pallet may not be subjected to the jurisdiction of this Court.  First, Plaintiffs provide no evidence that "the regular and anticipated flow" of the pallets as opposed to "unpredictable currents or eddies" caused the pallet in question to be present in Florida.  Plaintiffs have introduced no evidence that pallets manufactured by Precision Pallet were distributed to any other Sam's Club store in Florida other than the Sam's Club store in which the accident occurred.  In fact, Plaintiffs have not shown that a pallet manufactured by Precision Pallet, *other than the single pallet implicated in the accident*, was even present in the particular Sam's Club store in Panama City where the accident occurred.

Second, Groom stated in his deposition testimony that although he was aware that his pallets were being used in connection with Sam's Clubs stores, he was unaware which Sam's Clubs stores and in which states his pallets were being distributed.  No other evidence disputes Groom's testimony.  Thus, I cannot properly conclude that Precision Pallet was aware that its pallets were being distributed to Florida.

Finally, the pallets were not "marketed" in Florida as required by the Brennan test.  Precision Pallet conducted no business or sales of its pallets in Florida; rather, the sole purpose of the pallets as alleged by Plaintiffs was to assist in the transportation of a product - the Smart Gardener's Workshop - that *was* being marketed.

Justice Stevens, joined by two other Justices, set forth a third test of jurisdiction and concluded that whether conduct

> rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components. In most circumstances I would be inclined to conclude that a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' even though the item delivered to the forum State was a standard product marketed throughout the world.

480 U.S. at 133, 107 S. Ct. at 1037, 94 L. Ed. 2d at 111. Jurisdiction also fails under this third test because Plaintiffs have introduced no evidence, nor can any inferences be drawn, about the volume, value, and hazardous character of the pallets. In summary, Plaintiffs have failed to establish a prima facie case sufficient to withstand a directed verdict under World-Wide Volkswagen and the three tests under Asahi.

The final decision on which Plaintiffs rely is Morris v. SSE, Inc., 843 F.2d 469 (11th Cir. 1988). Such reliance is, however, misplaced. In Morris, the Eleventh Circuit concluded that the O'Connor test enunciated in Asahi was satisfied because the defendant placed the allegedly defective device into the national "stream of commerce," and the defendant's activities in the forum state "constitute[d] 'additional conduct' indicative of an intent or purpose to serve the Alabama market." Id. at 493-94. The product, a parachute opening device allegedly used by the deceased in her fatal parachute jump, was shipped to the defendant for repair from the Alabama store which sold the product, was repaired by the defendant, and was then shipped back to Alabama. The Eleventh Circuit stated that "[b]ecause [defendant] performed the repairs and returned the devices, it cannot be said that the [Alabama store's] unilateral action created [the defendant's] contacts with Alabama." Id. at 494. Second, the Eleventh Circuit determined that there was a "reasonable inference that [the defendant] advertised in Alabama." Id. Finally, the court reasoned that the device "falls within Justice Stevens' 'hazardous product' category because "parachuting is a hazardous activity." Id. The court concluded that "[t]hus it is clear that [the defendant] was aware that it was sending a hazardous product to [the Alabama store which sold it] and that

the hazardous product would be used in Alabama." Id.

In his concurrence, Judge Edmondson wrote:

> I write separately to stress two points that necessarily limit the future impact of our decision.
>
> First, it is important that the product in this case was perceived by the court as one that poses unusually great safety risks to persons. Because a parachute opening device must work correctly or someone likely will be killed or injured, repairers of such items probably can expect to be haled into courts in distant states if the repairers send the items there.
>
> Second, a concession narrowed the dispute before us. At oral argument, [defendant's] counsel (correctly or incorrectly) stated that if [plaintiff] sufficiently alleged that the repair was a relevant cause of the part of action, [defendant] loses its jurisdictional argument under the O'Connor Asahi analysis.

Id. at 496.

Morris is not this case. In Morris, the defendant shipped a hazardous product directly to the forum state after repairing it. Here, Precision Pallet had no direct contact with Florida; rather, the introduction of its pallets into Florida resulted from the unilateral activities of the other named defendants in this action. In addition, I cannot conclude that a pallet is a "hazardous product." A parachute opening device, if defective, is likely to cause severe injury or death. Pallets, on the other hand, are generally transported by forklift and away from people. The transportation of pallets by forklift generally warns individuals in the vicinity to remain outside the zone of danger, typically the locations beneath and within a certain radius of the pallets being lifted. Plaintiffs have offered no evidence that a pallet is an inherently hazardous product.

Because I have concluded that Precision Pallet lacks the minimum contacts with Florida necessary to justify this Court's exercise of jurisdiction over it, I further find that maintaining a suit against Precision Pallet in this Court does not comport with "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316, 66 S. Ct. at 158, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940). Accordingly, dismissal of the Second Amended Complaint as to Defendant Precision Pallet for lack of personal jurisdiction is required.

## CONCLUSION

1.  Defendant Precision Pallet, Inc.'s Motion to Dismiss (Doc. 46) is **granted**.

2.  The claims asserted in the Second Amended Complaint against Defendant Precision Pallet, Inc. are **dismissed for lack of personal jurisdiction**.

**ORDERED** on May 17, 2007.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**
